IN THE UNTIED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MILTON KEITH PERKINS, | ) | |
| | ) | |
| Petitioner, | ) | NO. 3:06-1141 |
| | ) | JUDGE HAYNES |
| v. | ) | |
| | ) | |
| ROBERT E. COOPER, JR., | ) | |
| Attorney General and Reporter, | ) | |
| | ) | |
| Respondent. | ) | |

**M E M O R A N D U M**

Petitioner, Milton Keith Perkins, filed this pro se action under 28 U.S.C. § 2254, seeking to set aside his conviction for aggravated robbery for which he received a sentence of 20 years. Petitioner's conviction was based upon his guilty plea. After a review of the petition, the Court appointed the Federal Public Defender to represent Petitioner and an amended petition was filed. Petitioner's specific claims are: (1) that his trial counsel provided ineffective of assistance on his guilty plea that resulted in an involuntary and unknowing plea; (2) that Petitioner's due process rights under the Fifth and Fourteenth Amendments were violated by his physical absence at his state post-conviction evidentiary hearing; (3) the Petitioner's post-conviction counsel failed to locate and subpoena alibi witnesses for the state post-conviction evidentiary hearing; and (4) that Tenn. Code Ann. § 40-30-110(a) authorizing an in abstentia post-conviction evidentiary hearing violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

**A. Procedural History**

On January 23, 2002, Petitioner pled guilty to aggravated robbery and was sentenced to 20 years consecutive to his Texas sentence. On November 22, 2002, Petitioner filed his state

post-conviction petition that his substitute counsel amended on December 14, 2004. The state trial court denied the post-conviction petition and on appeal, the Tennessee Court of Criminal Appeals affirmed. Perkins v. State of Tennessee, 2006 WL 1168849 (Tenn. Ct. Crim App. May 3, 2006). On September 25, 2006, the Tennessee Supreme Court denied Petitioner's application for review. Id. On November 10, 2006, Petitioner filed this action, but also then filed a second post-conviction petition, asserting ineffective assistance of his post-conviction counsel. That petition was denied, but Petitioner did not appeal. On March 22, 2007, Petitioner filed his amended petition in this Court. (Docket Entry No. 17).

## B. Review of the Record

### 1. Findings of Fact

The state appellate court made extensive factual findings[1] on Petitioner's post-convictions appeal as follows:

> At the post-conviction hearing, the petitioner's post-conviction attorney told the trial court that the petitioner was serving a forty-year sentence in the Texas Department of Correction and that the petitioner was not able to appear for the post-conviction hearing. The post-conviction attorney submitted the petitioner's affidavit at the hearing. In the petitioner's affidavit, the petitioner stated that he met with his trial attorney once before he entered his guilty plea and that he also met with his attorney's associate once. He stated he told his attorney he was serving a forty-year sentence in Texas and asked her what kind of a deal she could get for him because he wanted to return to Texas where he had an appeal pending. He stated he told his attorney he would accept a deal between ten and fifteen years concurrent to his forty-year sentence. He stated he was willing to enter a guilty plea because his criminal record was bad and another conviction would not hurt his record.
>
> The petitioner stated that at his next court date, his attorney told him she had

---

[1] State appellate court opinion findings can constitute factual findings in a habeas action, Sumner v. Mata, 449 U.S. 539, 546-47 (1981), and have a statutory presumption of correctness 28 U.S.C. § 2254(d).

2

spoken with the assistant district attorney, and the assistant district attorney did not want to offer a plea deal because the victim was willing to testify. He stated his attorney said the assistant district attorney had told him that the victim had identified the petitioner from a lineup and that the state was seeking life without parole under the "three strikes" law. He stated his attorney later told him that she was able to get the state to agree to a twenty-year sentence and that the sentence would have to be consecutive to his Texas sentence because he was on parole at the time he had committed the present offense. He stated, "I told [the attorney] that I was unsure of the Tennessee law and that just didn't sound right and I wasn't sure what exactly it meant ." He stated that his attorney told him she was willing to defend him at the trial but that he was facing life without parole if he went to trial. He stated he was overwhelmed by the possibility of life without parole and felt compelled to take the plea deal. He stated his attorney did not tell him he had to serve his Texas sentence before he served his Tennessee sentence.

The petitioner stated that after he was sentenced, he received copies of the police report and other documents which his attorney had acquired through her investigation. He stated he went through the documents and learned the victim was a male. He stated he then called his family and friends and was able to determine his whereabouts on the date and time of the robbery. He stated his brother and ex-girlfriend could have been alibi witnesses, because he was with them at a downtown nightclub at the time of the robbery. He stated that he tried to contact his attorney to tell her about the alibi witnesses and ask her to file a motion to withdraw his guilty plea but that he was unable to contact her.

The petitioner stated that less than one week after entering his plea, he was transferred back to Texas where he wrote a motion to withdraw his guilty plea. He stated he mailed it to his attorney, received a response back from her asking if he really wanted to withdraw the plea, and responded by directing his attorney to file the motion. He stated his attorney told him that the trial court would not hear the motion without the petitioner being present and that she would request the state to extradite the petitioner back to Tennessee. He stated that ten months later he received a letter from his attorney saying the state would not extradite him and that he should file a petition for post-conviction relief. He stated that if he had known the "three strikes" law was being improperly applied or if his attorney had more thoroughly investigated his case, he would not have pled guilty and would have gone to trial.

The petitioner's attorney testified that she had been practicing criminal law for approximately ten years and that she was appointed to represent the petitioner. She said the petitioner met with another attorney from her office first. She said that before she met with the petitioner, she received a letter from him asking her when he would receive a plea offer because he was in a hurry to return to Texas.

3

She said that at her first meeting with the petitioner, the petitioner again asked her what kind of plea bargain he could get, that she gave him a copy of the discovery, and that they discussed the case for approximately thirty minutes. She said that on the next court date, they again discussed the case. She said that the case was reset a couple more times and that on the day the petitioner entered his guilty plea, she went over the petition to enter a guilty plea with the petitioner and explained his rights to him. She said she explained the service percentage and the fact that the sentence would be served consecutively to his Texas sentence. She said the petitioner understood his guilty plea and knowingly and voluntarily entered the plea. She said that she did not have any recollection of the victim's gender being an issue and that the case involved the robbery of a male at a gas station. She said that she talked to the petitioner about the time and the place of the robbery and that the petitioner never raised an alibi defense.

On cross-examination, the petitioner's attorney testified she received a letter from the petitioner several months after his guilty plea telling her about alibi witnesses and about wanting to withdraw his plea. She said she sent a letter to the petitioner asking if he really wanted to withdraw his plea because he would face a greater sentence if he went to trial. She said she told the petitioner that the time had run for him to withdraw his plea and that his only avenue was to seek post-conviction relief. She said that the petitioner entered his plea in January 2002 and that she did not receive the petitioner's letter asking to withdraw his plea until June 2002. She said the petitioner did not tell her that his brother and ex-girlfriend could be alibi witnesses until after he sent her a fifth letter from Texas. She said that she did not know if the state ever filed a notice of intent to seek life without parole but that her notes reflected the assistant district attorney said she would file the notice if they went to trial. She said the petitioner would have qualified as a "three strikes" offender because he had three prior robberies, a burglary, and one or two other felony convictions. She said she discussed mistaken identity and cross-cultural identification with the petitioner as possible defenses. She said she told the petitioner that because he was on parole out of Texas when he committed the present offense, Tennessee required his sentence to be served consecutively to his Texas sentence. She acknowledged that they may have discussed that Texas might do something with the sentences to run them concurrently but that there was no agreement with Texas and that Tennessee law required them to be served consecutively.

Perkins, 2006 WL 1168843 at **1-3.

### C. Conclusions of Law

Petitioner's habeas petition is governed by the provisions of the Antiterrorism and
4

Case 3:06-cv-01141   Document 24   Filed 01/28/10   Page 4 of 15 PageID #: 265

Effective Death Penalty Act of 1996 ("AEDPA"). Lindh v. Murphy, 521 U.S. 320, 336 (1997). Under the AEDPA, federal courts may not grant habeas relief for claims adjudicated on their merits in a state court proceeding, unless that state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court stated that a state court judgment is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts." The Supreme Court interpreted the language "clearly established Federal law, as determined by the Supreme Court of the United States" as referring to "holdings, as opposed to dicta" of its decisions "as of the time of the relevant state-court decision." Id. at 412. In Bell v. Cone, 535 U.S 685, 693 (2002), the Court reiterated that AEDPA modified a federal court's role in reviewing state prisoner applications "in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under the law."

Under the "unreasonable application" clause, a state court judgment results in an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. The Supreme Court explained that a state

5

court's application of clearly established federal law must be "objectively unreasonable," and a federal habeas court may not grant habeas relief "simply because that court concludes in its independent judgment that the relevant decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A state court's application of federal law is unreasonable and habeas relief may be granted if the "state court decision is so clearly incorrect that it would not be debatable among reasonable jurists." Herbert v. Billy, 160 F.3d 1131, 1135 (6th Cir. 1998) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996)).

In reaching this decision, the Supreme Court reiterated that the claims were to be decided on the record before the state court:

> In this and related contexts we have made clear that whether a state court's decision was unreasonable must be assessed in light of the record the court had before it. See Yarborough v. Gentry, 540 U.S. 1, 6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam) 124 S.Ct., at 4 (denying relief where state court's application of federal law was "supported by the record"); Miller-El v. Cockrell, 537 U.S. 322, 348, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (reasonableness of state court's factual finding assessed "in light of the record before the court"); cf. Bell v. Cone, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

Holland v. Jackson, 542 U.S. 649, 652 (2004) (emphasis added). The district court also "must presume that all determinations of factual issues made by the state court are correct unless the Defendant can rebut that presumption by clear and convincing evidence." Mitchell v. Mason, 325 F.3d 732, 738 (6th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). This presumption includes credibility findings of the state courts. Skaggs v. Parker, 235 F.3d 261, 266 (6th Cir. 2001).

6

### 1. Involuntary Guilty Plea and Ineffective Assistance of Counsel Claims

Given his guilty plea, Petitioner's claims for habeas relief are limited as a matter of law and interrelated:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. <u>He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in</u> [McMann. v. Richardson, 397 U.S. 759, 770 (1970)].

Tollett v. Henderson, 411 U.S. 258, 267 (1973) (emphasis added).

Since <u>Tollett</u>, the Supreme Court reiterated in <u>United States v. Broce</u>, 488 U.S. 563 (1989), on defendant's withdrawal of his guilty plea:

> "A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents, a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." 397 U.S., at 757, 90 S.Ct., at 1473 (citation omitted).
>
> Similarly, we held in <u>McMann v. Richardson</u>, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), that a counseled defendant may not make a collateral attack on a guilty plea on the allegation that he misjudged the admissibility of his confession. "Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts." <u>Id.</u>, at 770, 90 S.Ct., at 1448. See also <u>Tollett v. Henderson</u>, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973) ("[J]ust as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings") (citation omitted).

7

Id. at 763-64.

Thus, Petitioner's actual claims about his trial counsel are interrelated to his guilty plea claim and will be addressed jointly. Petitioner also alleges that his post-conviction counsel failed to secure his presence in Tennessee from Texas to ensure his presences and to locate alibi witnesses and compel their testimony violated his right to due process. Petitioner contends that his post-conviction challenge to his guilty plea is the "functional equivalent" of a direct appeal. These latter claims will be addressed separately.

Here, Petitioner contends that the ineffectiveness of his counsel renders his guilty plea unknowing and involuntary because his trial counsel: (1) "erroneously informed" him about the gender of his alleged victim; (2) did not provide Petitioner with discovery materials until after his guilty plea: (3) did not provide the names of potential alibi witnesses prior to his plea; (4) falsely informed Petitioner of the "three strikes" notice; (5) failed to move timely to withdraw his guilty plea; (6) failed to investigate the alleged facts and locate "critical" alibi witnesses; and (7) failed to adequately explain a "consecutive sentence."

To establish ineffective assistance of counsel, Petitioner must demonstrate that under the totality of the circumstances, his trial counsel performed deficiently and that counsel's performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 695 (1984). As the Supreme Court has explained:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

8

Id. 687.

As to the "performance" inquiry, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688. Under Strickland, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691. As to the duty to investigate:

> These standards require no special amplification in order to define counsel's duty to investigate, the duty at issue in this case. As the Court of Appeals concluded, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.
>
> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decision, just as it may be critical to a proper assessment of counsel's other litigation decisions.

Id. at 690-91.

In any event, Strickland directs that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "[i]n any ineffectiveness case, a particular decision not to investigate

9

must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. at 689, 691. As the Supreme Court noted, "[c]ounsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information." Id. at 691 (emphasis added). Counsel's failure "to conduct constitutionally adequate pretrial investigation into potential evidence" can "hamper[] [their] ability to make strategic choices." Harries v. Bell, 417 F.3d 631, 639 (6th Cir. 2005). A court must examine not only to the individual errors of counsel, but must also view the effect of the errors cumulatively. See Draper v. Adams, 215 F.3d 1325, 2000 WL 712376, at *3 (6th Cir. May 23, 2000).

To establish prejudice due to his counsel's errors or omissions, Petitioner must establish a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Williams, 529 U.S. at 390-91. In a word, "[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." Strickland, 466 U.S. at 694.

Where the ineffective assistance of counsel claim involves a guilty plea, Petitioner must present proof that but for his counsel's acts or omissions and under all of the circumstances, he would not have pled guilty and would have insisted upon a trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985). This assessment includes whether any "affirmative defense likely would have succeeded at trial," id.; Maples v. Stegall, 340 F.3d 433, 440 (6th Cir. 2003), and whether any

10

cited evidence "likely would have changed the outcome of the trial." Hill, 474 U.S. at 59; Dando v. Yukins, 461 F.3d 791, 800 (6th Cir. 2006).

As to the first set of these claims, the record reflects that state courts' findings that Petitioner's trial counsel provided discovery materials to Petitioner and discussed alibi witnesses and the victim's gender was not relevant to his plea:

> [O]n the petitioner's first court date, she gave the petitioner a copy of discovery and discussed the case with the petitioner for thirty minutes. She stated that on the next court date after the petitioner had time to review the discovery, they discussed what was provided in the discovery. She said that she had no recollection of the victim's gender being in question and that the case involved the robbery of a male at a gas station. She also said that they talked about the time and place of the robbery and that an alibi defense "never presented itself." Additionally, we note the record is devoid of any testimony from the petitioner's brother or ex-girlfriend. We conclude that the petitioner has failed to prove by clear and convincing evidence that his attorney's performance was deficient and that he is not entitled to relief on this issue.

Perkins, 2006 WL 1168849, at *6 (emphasis added).

The state courts' factual findings do not support these claims about Petitioner's trial counsel's omissions on these claims nor that Petitioner suffered any actual prejudice therefrom. The state record does not reflect that the victim's identity would have altered the outcome of Petitioner's state proceedings.

As to his trial counsel's misleading of Petitioner on Tennessee's "three strikes" statute, the state appellate court's findings were as follows:

> The petitioner contends he received the ineffective assistance of counsel because he was misled by his attorney to believe that the state was seeking life imprisonment without parole and that the state had filed a "three strikes" notice against him. He asserts he was coerced and threatened into pleading guilty by his attorney's telling him he faced life without parole if he went to trial. The state asserts the attorney's advice was an accurate explanation of the consequences the petitioner faced if he went to trial. The state asserts the petitioner had an extensive

11

criminal history including three robbery convictions, one burglary conviction, and one or two other felony convictions, which classified him as a "three strikes" offender. The state asserts the attorney was performing her duty by informing the petitioner about the possible life sentence and was not intimidating the petitioner.

The trial court addressed this issue in its order denying the petition for post-conviction relief. The trial court stated that:

> The Court finds that [the attorney] believed that based on the Petitioner's extensive prior criminal history, he qualified as a three strike life offender, and that the State would be filing such a notice if the Petitioner proceeded to trial. The Court is of the opinion that [the attorney] accurately explained the consequences of the Petitioner proceeding to trial. The Court is of the opinion that this accurate statement was used to allow the Petitioner to make an informed decision, and not to intimidate or coerce the Petitioner into entering a guilty plea. The Court is of the opinion that this issue is without merit.

Tennessee Code Annotated section 40-35-120 is the repeat violent offenders or "three strikes" statute. The relevant subsection states:

> The court shall sentence a defendant who has been convicted of any offense listed in subdivision (b)(1), (c)(1) or (d)(1) to imprisonment for life without possibility of parole if the court finds beyond a reasonable doubt that the defendant is a repeat violent offender under subsection (a).

T.C.A. § 40-35-120(g). The statute lists the offenses required for a defendant to be sentenced as a repeat violent offender. See T.C.A. § 40-35-120(a)-(d).

> The record reflects the petitioner was charged with aggravated robbery in this case and was serving a forty-year sentence out of Texas on another conviction. The record reflects that he had three robbery convictions, a burglary conviction, and one or two other felony convictions and that he was a Range III, persistent offender. The petitioner's attorney testified the petitioner qualified as a "three strikes" offender, and the trial court accredited the testimony of the attorney. We conclude the petitioner has failed to prove by clear and convincing evidence that his attorney's performance was deficient, and the petitioner is not entitled to relief on this issue.

Id. at *7 (emphasis added). This Court concludes that the state appellate and trial courts' findings of fact reflect that these claims also lack factual and legal merit.

As to Petitioner's trial counsel's failure to withdraw his guilty plea after Petitioner provided his counsel with a copy of his hand-written motion of his intent to withdraw his guilty plea, the state appellate court found as follows:

> The petitioner contends that he received the ineffective assistance of counsel because his attorney did not timely file a motion to withdraw his guilty plea. The state replies that this allegation is irrelevant because the events occurred long after the petitioner pled guilty. The state argues that it had no bearing on the petitioner's decision to plead guilty. The state also asserts the petitioner, not the attorney, was untimely in filing the motion.
>
> The trial court addressed this issue in its order denying the petition for post-conviction relief. The trial court stated that:
>
>> The Court is of the opinion that this allegation pertains to events that took place after the Petitioner [pled] guilty, and had no impact on the Petitioner's decision to plead guilty. <u>Nevertheless, the Court finds that [the attorney] received the Petitioner's letter asking that his plea of guilty be set aside in June of 2002, approximately four months after the Petitioner [pled] guilty on January 23, 2002. The Court is of the opinion that [the attorney] had no fault in receiving the Petitioner's request approximately ninety days after the judgment of conviction had become final. The Court finds no merit in the Petitioner's allegation that the fault lies with [the attorney] in the Petitioner failing to have his guilty plea set aside.</u>
>
> A defendant may attempt to withdraw a guilty plea before sentencing or, "to correct manifest injustice," after sentencing but before the judgment becomes final. Tenn. R.Crim. P. 32(f). A trial court's judgment as a general rule becomes final thirty days after its entry. See State v. Pendergrass, 938 S.W.2d 834, 837 (Tenn.1996). After the trial court loses jurisdiction, generally it retains no power to amend a judgment. Id. The judgment for the aggravated robbery conviction is not included in the record before us. However, the record reflects the petitioner pled guilty on January 23, 2002, to an agreed sentence of twenty years to be served as a Range III, persistent offender to be served consecutively to his Texas sentence.
>
> <u>The petitioner's attorney testified she received a letter from the petitioner in June 2002 asking her to file a motion to withdraw his guilty plea. The trial court accredited the testimony of the attorney and found the petitioner did not request his attorney to withdraw the plea until more than ninety days after the judgment</u>

13

> had become final. We conclude the petitioner has failed to prove by clear and convincing evidence that his attorney's performance was deficient, and the petitioner is not entitled to relief on this issue.

Perkins, 2006 WL 1168849, at *8 (emphasis added).

To be sure, Petitioner contends that if the prison mail room records had been produced at his post-conviction hearing, his counsel's testimony would have been refuted. Yet, the Sixth Amendment right to counsel does not extend to Tennessee's post-conviction process, Murray v. Giarratano, 492 U.S. 1, 10 (1989), and any omissions of post-conviction counsel are not grounds for habeas relief. Wainwright v. Torna, 455 U.S. 586 (1982) nor to establish cause for a procedural default. Ritchie v. Eberhart, 11 F.3d 587, 591-92 (6th Cir. 1993). In any event, Petitioner has not submitted any such proof in this action. Moreover, in this Circuit, denial of a motion to withdraw a guilty plea before sentencing is permissible for shorter time periods than at issue here. See United States v. Ford, 15 Fed. Appx. 303, 306 (6th Cir. 2001) (collecting cases). Based upon the state courts' findings and Broce, the Court concludes that the state courts' rulings on this claim are not unreasonable.

As to Petitioner's challenge to his physical absence at his post-conviction hearing his and challenge to state law authorizing such a proceeding, the Supreme Court has held that state courts are not obligated to provide post-conviction relief. United States v. MacCollom, 426 U.S. 317, 323 (1976). Post-conviction review is permitted "without requiring the full panoply of procedural protection that the Constitution requires by given" to defendants on appeal as of right from a conviction. Pennsylvania v. Finley, 418 U.S. 551 (1990). Here, Petitioner filed his affidavit in the state post-conviction hearing and the Sixth Circuit has upheld state post-conviction decisions that were based upon affidavits. See Byrd v. Collins, 209 F.3d 486, 515 (6th Cir. 2000).

14

Moreover, to obtain habeas relief on these claims, Petitioner must cite a Supreme Court holding applicable at the time of his post-conviction hearing that required his physical presence at the state court post-conviction hearing. The Supreme Court interpreted the language "clearly established Federal law, as determined by the Supreme Court of the United States" as referring to "holdings as opposed to dicta" of its decisions at the time of the state court decision. <u>Williams</u>, 529 US. at 412. Petitioner has not cited any Supreme Court decision requiring his presence at a post-conviction hearing.

For these reasons, the Court concludes that the petition should be denied and this action should be dismissed.

An appropriate Order is filed herewith.

**ENTERED** this the 28th day January, 2010.

WILLIAM J. HAYNES, JR.
United States District Judge